# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STEVEN T. HOLLIS, III, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-18-2653 |
| DAWN HAWK, *et al.*, | * | |
| Defendants | * | |

## MEMORANDUM OPINION

Self-represented Plaintiff, Steven Hollis, filed the above-captioned civil rights action against Defendants Wexford Health Sources, Inc. ("Wexford") and Dawn Hawk. Hollis challenges the medical treatment he received following his complaints of a swollen scrotum. ECF No. 1. Defendants filed a Motion to Dismiss, ECF No. 9, and Hollis filed a Response in Opposition, ECF No. 14. On the Court's instruction, Defendants also addressed the timing of Plaintiff's filing of the Complaint, to which Hollis responded. ECF Nos. 20, 21. The matter is now ripe for review, with no need for a hearing. *See* Local Rule 105.6. For the reasons that follow, Defendants' Motion to Dismiss is GRANTED as to Defendant Wexford and DENIED as to Defendant Hawk.

## I. Background

Hollis alleges that on August 9, 2015, he sought medical attention from Nurse Dawn Hawk at North Branch Correctional Institution for a swollen scrotum. He states:

> 4. I was physically walked, almost carried to the medical office by some officers on the 3-11 shift from the housing unit 2-A-tier dayroom.
>
> 5. Upon my arrival I was ungreeted by the nurse know in this lawsuit as Dawn Hawk.

> 6. Before struggling to take a seat she said she wasn't looking at my scrotum to see how severely swollen it was, she wasn't touching it, and not sending me out to get it looked at.
>
> 7. She told [Correctional Officer] Beasom to give me a pack of ice and she would bring the [ibuprofen] down.
>
> 8. The camera will show [Officer] Beasom giving me a[n] ice bag and then later on coming to the cell tossing [ibuprofen] to me on the top bunk.
>
> 9. The next morning when I was getting ready to pray, I smelled a[n] awful smell. I looked down and blood was running down my leg. . . . I was seen by medical and the nurse said that I had a[n] abscess and the medication that was given to the police to give me caused it to burst.

ECF No. 1 at 2.

Defendants move to dismiss the Complaint as barred by limitations. ECF No. 9-2 at 2-3; ECF No. 20. Defendant Wexford additionally contends that dismissal is warranted because Hollis has failed to aver plausibly any facts supporting liability as to the institution. ECF No. 9-2 at 3-4. Defendant Hawk contends that dismissal is warranted as to her because the Complaint, at best, states a claim for medical negligence and not deliberate indifference to a serious medical need. *Id.* at 4.

## II.     Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked

assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and viewed in the light most favorable to him. *Twombly*, 550 U.S. at 555. The Court may also consider documents attached to the motion to dismiss when "integral to and explicitly relied on in the complaint, and when the [opposing parties] do not challenge the document[s'] authenticity." *Zak v. Chelsea Therapeutics, Int'l, Ltd.,* 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.,* 367 F.3d 212, 234 (4th Cir. 2004)) (internal quotation marks omitted). However, "[f]actual allegations must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "[C]onclusory statements or a 'formulaic recitation of the elements of a cause of action will not [suffice].' " *EEOC v. Performance Food Grp., Inc.,* 16 F. Supp. 3d 584, 588 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "'[N]aked assertions of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 557). Although pro se pleadings are construed liberally to allow for the development of a potentially meritorious case, *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), courts cannot ignore a clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.,* 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate.").

### III. Discussion

#### A. Statute of Limitations

Hollis brings his claims pursuant to 42 U.S.C. § 1983. It is well-settled that the limitations period for § 1983 claims is determined by the analogous state law statute of limitations. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Burnett v. Grattan*, 468 U.S. 42, 49 (1984). In Maryland, the applicable statute of limitations for allegations of ineffective medical care is three years from the date of the occurrence. *See* Md. Cts. & Jud. Pro. Code § 5-101.

Defendants contend, and Hollis does not dispute, that the action accrued on August 9, 2015, the date Hollis sought treatment from Hawk for his swollen scrotum. ECF No. 9-2 at 2. The parties also agree that Hollis is entitled to the benefit of the prison mailbox rule, meaning that his Complaint is deemed filed on the date that he gave it to prison officials for mailing. *Id.*; ECF No. 14 at 2-3; *see also Houston v. Lack*, 487 U.S. 266, 276 (1988) (stating prison mailbox rule). Also not disputed (although not directly addressed) is that this Court received the Complaint on August 27, 2018, along with several other documents, to include: a copy of the Complaint which was missing at least one page and was both undated and unsigned (ECF No. 1); an undated draft summons (ECF No. 1-2); a Motion for Leave to Proceed In Forma Pauperis dated August 3, 2018 and signed under oath (ECF No. 2 at 2); a signed but undated Complaint for another case docketed as *Hollis v. Corcoran*, (PX-18-2683, ECF No. 1); another undated draft summons for Case No. 18-2683, and other documents related to both cases. The Court finds that, based on the materials mailed to the Court in this envelope, the earliest possible date of the mailing is August 3, 2018, the date that appears on the Motion for Leave to Proceed In Forma Pauperis in this case.

However, the parties dispute when Hollis gave his Complaint to prison officials for mailing, which would be the date of filing for purposes of the prison mailbox rule. Defendants

4

contend that Hollis's Complaint was filed on August 24, 2018, which is the date provided by the "Outgoing Inmate Mail" stamp on the outside envelope. Case No. 18-2653, ECF No. 9-2 at 2-3; *see* ECF No. 1-1 at 2 (stamp on envelope). However, Hollis contends that he gave the Complaint to "[Correctional Officer] Miller in accordance with N.B.C.I. certified mail procedures. Hollis filed claim on 8-4-2018, however the prison didn't not [sic] send the claim out until 8-8-2018." ECF No. 14 at 2-3. In support of this contention, Hollis cites to what appears to be his Inmate Account Statement indicating that he was charged $0.47 for postage on August 8, 2018. *Id.* at 3; ECF No. 4 at 3.

When the Court asked Defendants to supplement as to the question of the Complaint's timeliness, *see* ECF No. 19, Defendants submitted an affidavit from Lieutenant David Barnhart who attests generally to the prison's mail system. ECF No. 20-1. Defendants further contend that "had Plaintiff placed his complaint in the mail box on August 4, 2018, it would have arrived in the mail room on August 6, 2018. Allowing an additional a [sic] two days for processing (due to the tainted mail scare originating in the Pennsylvania corrections system), the mail would have been sent August 8, 2018." ECF No. 20 at 2. Defendants further contend that because the envelope is stamped August 24, 2018, ordinary practice would dictate it was received in the prison mail system either one or two days before, but in any case, *after* limitations had expired. *Id. See also* ECF No. 20-1 (Barnhart's affidavit). Hollis vigorously opposes Defendants' contentions as to timing of receipt and mailings. ECF No. 21.

The Court is unwilling to find that the Complaint is time-barred on this record. The parties contest the facts regarding receipt and mailing of the Complaint in a manner which raises more questions than answers. Defendants urge, for example, that the Court believe Hollis had placed the Complaint in his tier's mailbox while Hollis maintains that he gave it to Officer Miller. Further

5

factual development may be necessary should Defendants persist in this argument. *See Houston*, 487 U.S. at 275 ("[the prisoner] hands [his mail] over to prison authorities who have well-developed procedures for recording the date and time at which they receive papers for mailing and who can readily dispute a prisoner's assertions that he delivered the paper on a different date.").[1]

B.  **Defendant Wexford**

As to Defendant Wexford, Hollis must do more than aver supervisory liability to sustain his claim. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials under § 1983 "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). For the claim proceed against Wexford, Hollis must aver facts from which the Court could plausibly infer that: (1) a supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the two. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

When viewing the facts as true and most favorably to Hollis, the claim against Wexford fails as a matter of law. *See* ECF No. 1 at 1 (claiming that Wexford is liable because it is "responsible for [Hawk's] actions"). The Complaint offers no facts by which this Court could

---

[1] Plaintiff's contentions also raise concerns. Although Plaintiff maintains that the August 8, 2018 Inmate Account deduction of $0.47 represents the postage used to file this Complaint, that amount appears inconsistent with the seven "Forever" stamps affixed to the envelope in which the Complaint and other documents were received by this Court. See ECF No. 1-1.

infer that Wexford knew or had constructive knowledge of his allegedly deficient medical care and offers no facts to support "an affirmative causal link" between Defendants' failure to act and the alleged violation of Hollis' Eighth Amendment rights. Accordingly, Wexford shall be dismissed.

### C. Defendant Hawk

The case against Defendant Hawk, by contrast, shall proceed. Hollis contends that Hawk, through provision of inadequate medical care, violated his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" through the guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment," *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003), and may include claims premised on denial of medical care. To sustain such a claim, the plaintiff must aver sufficient facts, when taken as true, that demonstrate defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). To demonstrate a defendant's deliberate indifference to a serious medical need, the plaintiff must show that, objectively, he was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical care but failed to provide it or assure that necessary care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*,

503 U.S. 1, 9 (1992). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

The subjective component is satisfied only where a prison official "subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). On the other hand, simple medical negligence "does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06; *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference.").

Defendant Hawk argues that Hollis' claim amounts to no more than mere negligence not actionable under § 1983. Hawk more particularly characterizes the claim as a failure to provide proper treatment of his scrotum. Hawk misconstrues the claim. Hollis alleges that Hawk, when faced with Hollis' obviously serious condition, refused to even examine him. *See* ECF No. 1 at 2 ("[S]he said she wasn't looking at my scrotum to see how severely swollen it was, she wasn't touching it, and not sending me out to get it looked at."). Hollis further alleges that the swelling, ultimately, was caused by an abscess which burst. Accordingly, taking the averred facts as true and most favorably to Hollis, Hawk had actual knowledge of the serious and painful medical

8

condition, yet refused to provide the necessary care or ensure that care was made available. If proven to be true, the facts demonstrate Hawk's deliberate indifference to Hollis's serious medical needs. The motion to dismiss is denied.

## IV.    Conclusion

For the foregoing reasons, the Motion to Dismiss is granted as to Defendant Wexford and denied as to Defendant Hawk. Hawk is instructed to file an Answer or a renewed dispositive motion.

A separate Order follows.

|  |  |
|---|---|
| 7/1/19 | /S/ |
| _____ | _____ |
| Date | Paula Xinis<br>United States District Judge |