IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN T. HOLLIS, III,            *

Plaintiff                          *

v                                  *        Civil Action No. PX-18-2653

DAWN HAWK, *et al.*,               *

Defendants                         *
                                  ***

**MEMORANDUM OPINION**

Steven Hollis brings this suit pursuant to 42 U.S.C. § 1983, alleging that Defendant Dawn Hawk, a nurse practitioner employed at Northern Branch Corrections Institution (NBCI), subjected him to cruel and unusual punishment through the denial of medical care. ECF No. 1. Hawk has moved for summary judgment to which Hollis has responded. The matter is now ripe for review, with no need for a hearing. *See* Loc. R. 105.6. For the reasons that follow, Hawk's motion is GRANTED.

**I.  Background**

The facts from the record are construed in the light most favorable to Hollis. On July 31, 2015, Hollis sought medical attention for redness, itching and associated difficulties arising from Hollis having an un-circumcised penis. ECF No. 30-3 at 2. Hollis requested a medical consult regarding possible circumcision. *Id.*

Less than two weeks later, on August 9, 2015, Hollis complained of swollen testicles requiring immediate medical attention. ECF No. 30-3 at 4. Hawk responded to Hollis' housing unit to examine him. *Id.* Hollis was in "mild distress" and, according to Hawk's medical notes, was "reluctant to show [Hawk] his testicles." *Id.*; ECF No. 30-4.

Hollis told Hawk that his testicles had been "swollen for months" and that Hawk "need[s] to call someone now." *Id.* Hawk advised Hollis no doctors were at the facility but that he could be evaluated by a healthcare provider in the morning. *Id.* Hawk also referred Hollis for follow-up evaluation and treatment by a health care provider, advised that he should apply cold compresses to the affected area, and provided him with ibuprofen. *Id.* at 5; ECF No. 30-4.

The next morning, a male nurse, Robert Claycomb, examined Hollis. *Id.* at 6. Claycomb observed a large lump on Hollis's scrotum that was open, bleeding, and foul smelling. Claycomb diagnosed Hollis with a scrotal abscess and referred Hollis for evaluation with a physician. *Id.* That same morning, Dr. Ashraf Mahboob examined Hollis. ECF No. 30-3 at 8. Hollis was admitted to the patient infirmary where he was treated with antibiotics and topical dressings. *Id.* On August 19, 2005, notes from Hollis' follow-up provider visit reflect that Hollis no longer had signs or symptoms of infection. *Id.* at 11.

## II. Standard of Review

Hawk moves for summary judgment as to the Eighth Amendment claim against her. Summary judgment is appropriate when the Court, construing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party, finds no genuine dispute exists as to any material fact, thereby entitling the movant to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011). Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In responding to a proper motion for summary judgment," the opposing party "must present evidence of specific facts from which the finder of fact could reasonably find for him or her." *Venugopal v. Shire Labs.*, 334 F.

Supp. 2d 835, 840 (D. Md. 2004), *aff'd sub nom., Venugopal v. Shire Labs., Inc.*, 134 F. App'x 627 (4th Cir. 2005) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 252 (1986); *Celotex*, 477 U.S. at 322–23)). Genuine disputes of material fact are not created "through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (*quoting Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). Where a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Where formal discovery has not taken place, the non-movant may file an affidavit with the Court setting out what discovery he needs to challenge adequately a summary judgment motion. *See* Fed. R. Civ. P. 56(d). "The Fourth Circuit places 'great weight' on the affidavit requirement." *Nautilus Ins. Co. v. REMAC Am., Inc.*, 956 F. Supp. 2d 674, 683 (D. Md. 2013) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). However, non-compliance may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Courts place greater weight on the need for discovery "when the relevant facts are exclusively in the control of the opposing party," such as "complex factual questions about intent and motive." *Id. (quoting* 10B Wright, Miller & Kane, Federal Practice & Procedure § 2741, at 419 (3d ed. 1998)) (internal quotation marks omitted).

Hawk attaches the relevant medical records and an affidavit surrounding her singular medical visit with Hollis, putting Hollis on notice that this motion may be construed as one for summary judgment. Hollis does not object to treating the motion as such and asks the Court to recognize certain provisions in the "sick call manual" that required Hawk to notify an on-call health care provider and document Hollis' purported refusal of treatment. ECF No. 36 at 2-4. The

Court will take Hollis' references to prison policies into account and credit that such evidence is available to him. Hollis also moves to subpoena his medical records related to this matter which have already been included in the record.[1] The Court will thus treat the motion as one for summary judgment.

## III. Discussion

Hollis maintains that Hawk violated his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution by refusing to treat Hollis' serious medical condition. The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" through the guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment," *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003), and may include claims premised on denial of medical care. To sustain such a claim, the plaintiff must aver sufficient facts, when taken as true, that demonstrate defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

"Deliberate indifference is a very high standard – a showing of mere negligence will not meet it. . . . [T]he Constitution is designed to deal with deprivations of rights, not errors in judgments, even though such errors may have unfortunate consequences." *Grayson v. Peed*, 195 F.3d 692, 695-96 (4th Cir. 1999). To demonstrate a defendant's deliberate indifference to a serious medical need, the plaintiff must show that, objectively, he was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical care but failed to

---

[1] Hollis' motion also requests "sick call" and "sick call refusal" records. The records provided do document that Hollis requested medical attention and received the same. ECF No. 37. The motion for subpoena is denied as moot.

provide it or assure that necessary care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

The subjective component is satisfied only where a prison official "subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). On the other hand, simple medical negligence "does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 105-06; *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference.").

Hawk principally argues that the record evidence, viewed most favorably to Hollis, shows that he refused her care because he did not want a female nurse examining his scrotum. Indeed, the medical records do support that Hollis was "reluctant" to let Hawk examine him, a reluctance that is further corroborated by his willingness to allow a male nurse to examine him the next morning. ECF No. 30-3. Hollis also does not meaningfully contest that he did not want Hawk to

look at his testicles, but instead argues that Hawk failed to follow proper protocol when faced with such "refusal." ECF No. 36 at 4 ("Indeed there are two ways in which evaluating health care professional should handle refusal of treatment.").

However, even if Hollis could demonstrate that Hawk chose not to examine his testicles on August 9, no reasonable factfinder could conclude that Hawk was deliberately indifferent to Hollis' serious medical needs. Hawk responded to Hollis' complaints timely by reporting to his housing unit. Hawk also referred him for follow-up evaluation and treatment by a medical provider, and proscribed ibuprofen and cold compresses in the interim. The next morning, a male nurse examined Hollis, and Dr. Mahboob treated him appropriately for his testicular abscess. Hollis thus received appropriate medical care based on Hawk's referral.[2] Thus, the brief delay in antibiotic treatment, while not ideal, simply does not rise to the level of deliberate indifference.

Moreover, even if, as Hollis contends, Hawk violated protocol by not having him sign a refusal of treatment slip or immediately contacting a health care provider, the record amply demonstrates that Hawk secured timely care. Hawk may have failed to follow prison procedure. However, this failure, if true, does not mean she was deliberately indifferent to Hollis' serious medical needs. Summary judgment, therefore, must be granted in Hawk's favor.

## IV. Conclusion

For the foregoing reasons, the Court grants Hawk's motion for summary judgment. A separate Order follows.

February 12, 2020                                                  /S/
Date                                                                      Paula Xinis
                                                                          United States District Judge

---

[2] Hollis argues that Hawk fabricated records, but this accusation is unsupported.

6